IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**KIRKLAND LEANDER SMALLS,**
          **Plaintiff,**

vs.                                                       Case No. 3:06cv96/LAC/MD

**LUIS BERRIOS, M.D., et al.,**
          **Defendants.**

---

### REPORT AND RECOMMENDATION

This case filed pursuant to 28 U.S.C. § 1331 and *Bivens*[1] is now before the court upon defendants Berrios and Ferguson's motion to dismiss, or in the alternative, for summary judgment filed on March 16, 2007 (doc. 37).  On March 22, 2007 the court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, informing the parties that the motion would be construed as one for summary judgment as of April 5, 2007, and providing the parties ten days in which to submit additional Rule 56 materials (doc. 41).  The *pro se* plaintiff, who is proceeding *in forma pauperis* in this action,[2] has not filed a response to the motion for summary judgment.  Defendants Berrios and Ferguson have not submitted additional argument or Rule 56 materials.  Upon review of the submissions of the parties, it is the opinion of the undersigned that the motion for summary judgment filed by defendants Berrios and Ferguson should be

---

[1]*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing an implied cause of action under the Constitution against federal employees in their individual capacities for violation of constitutional rights).

[2]Court records reflect as of the date of this Report and Recommendation, the plaintiff has made payments totaling $192.22 toward the $250.00 filing fee; therefore, he still owes $57.78 to the court.

granted.  It is further the opinion of the undersigned that even though service has not been effected upon defendant Graham, plaintiff's claim against this defendant should be dismissed with prejudice.

## BACKGROUND

At the time of the events giving rise to this complaint, plaintiff was incarcerated at the Federal Prison Camp at Eglin Air Force Base ("FPC-Eglin") located near Pensacola, Florida.[3]  Named as defendants in this action are Doctor Luis Berrios, former Clinical Director at FPC-Eglin; Wayne Graham, former Safety Manager at FPC-Eglin; and Rodney Ferguson, Golf Course Superintendent at Eglin Air Force Base.

In his verified second amended complaint ("complaint") (doc. 14), plaintiff alleges that on August 13, 2003 he was working on his assigned work detail mowing grass at the Eglin Air Force Base golf course.  Plaintiff encountered a mechanical problem with his lawnmower.  Upon returning to the shop with the mower, defendant Ferguson ordered plaintiff to use a different type of mower ("the second mower") to finish the remaining twenty minutes of plaintiff's shift.  Plaintiff was unfamiliar with the second mower and advised defendant Ferguson that he had not received safety training on it.  Nevertheless, defendant Ferguson ordered plaintiff to return to work using the second mower.  While using this mower, plaintiff inadvertently caused the hydraulic mower deck to rise, trapping his foot between the body of the mower and the deck with sufficient force as to smash the steel toe of his boot and cause injury to his foot.  Plaintiff reported the accident and injury, and was taken to the medical department at FPC-Eglin.  Plaintiff states that prior to the accident he had not received operational or safety training on the second mower or any other piece of equipment.  According to plaintiff, defendant Ferguson's failure to provide safety training to inmates was contrary to Federal Bureau of Prisons ("BOP") policy, and could not have occurred without defendant Graham's knowledge.

Plaintiff further alleges that upon his arrival at the medical department, he was examined by defendant Doctor Berrios and Physician Assistant Georgy ("P.A

---

[3] FPC-Eglin has since been closed.

Georgy").[4]  Plaintiff had a laceration on his foot and was in a great deal of pain. Plaintiff complains that defendant Doctor Berrios ordered P.A. Georgy to suture plaintiff's foot without an anesthetic, explaining that there wasn't enough time and it wouldn't do plaintiff any good.  After receiving stitches, plaintiff returned to his housing unit with an over-the-counter pain reliever and band-aids.

On August 18, 2003 plaintiff was called to the medical department, where he met with Doctor Casiano and Physician Assistant Frank Kaufman.  Upon examination they concluded that plaintiff's foot was fractured, and ordered x-rays. Plaintiff's foot was x-rayed approximately three weeks later.

Prior to receiving the x-ray results plaintiff initiated the grievance process against P.A. Georgy "for his actions at the time of [plaintiff's] initial treatment." Defendant Doctor Berrios and P.A. Georgy called plaintiff to the medical department and complained about the grievance.  After informing plaintiff that the x-rays "were fine," they tore up the grievance, stating that the issue had been resolved.  When plaintiff inquired why he was still experiencing pain in his foot, they responded that the type of injury plaintiff sustained would have to heal on its own.  Plaintiff states that to this day, he suffers from pain, disfigurement of his large and second toes, corns, bunions, problems with prolonged standing and walking, restricted mobility, back problems, and other unidentified injuries "caused from my toe giving out on me."  (Doc. 14, p. 8, Statement of Facts).

The asserted bases for plaintiff's claims are 28 U.S.C. § 1331 and *Bivens, supra*.  Specifically, plaintiff claims defendant Ferguson violated his rights under the Eighth Amendment when he compelled plaintiff to operate a mower on which he had not received operational or safety training.  He claims that defendant Graham violated his Eighth Amendment rights when he failed to ensure that BOP policy on inmate safety training was properly followed.  Plaintiff claims that defendant Doctor Berrios violated his rights under the Eighth Amendment "by demonstrating an attitude of deliberate indifference toward the Plaintiff's injuries and his conduct treating those injuries was unreasonable in light of a known ri[s]k of harm or

---

[4] P.A. Georgy is not named as a defendant in this action.

suffering."  (Doc. 14, p. 9, Statement of Claims).  As relief, plaintiff seeks "outside" medical evaluation and treatment, and $150,000 in damages.

Defendants Berrios and Ferguson, in their motion for summary judgment, contend: (1) that plaintiff's allegations fail to state an Eighth Amendment claim against any of the defendants; (2) that all of the defendants are entitled to qualified immunity; (3) that, at most, the issues presented by plaintiff sound in negligence, which can only be brought against the United States; (4) that plaintiff failed to exhaust his administrative remedies with respect to his workplace safety claims against defendants Graham and Ferguson; (5) that because plaintiff's claims arise from a work-related injury, his exclusive remedy is the Inmate Accident Compensation Act, 18 U.S.C. § 4126(c)(4)(2006); and (6) that "under the undisputed facts of this case, the Plaintiff cannot demonstrate any theory upon which he could recover and summary judgment in favor of the defendants and against the Plaintiff is appropriate as there is no demonstrable negligence."  (Doc. 37, pp. 3-4). Defendants have filed several documents in support of their motion, including, but not limited to, an affidavit of defendant Doctor Berrios (*id.*, ex. 7), and copies of plaintiff's medical records (*id.*, exs. 4A-4E, 8), administrative grievances (*id.*, exs. 3A-3B), and job efficiency training reports (*id.*, ex. 5).

As previously stated, plaintiff has not responded to the motion for summary judgment.

## LEGAL ANALYSIS - CLAIMS AGAINST BERRIOS AND FERGUSON

### Summary Judgment Standard

In order to prevail on his motion for summary judgment, the defendant must show that plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If the defendant successfully negates an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id.  Accord Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  Further, plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. *Celotex*, 477 U. S. at 324 (quoting FED.R.CIV.P. 56(e)).  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex, supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"), *cert. denied,* 522 U.S. 1126 (1998) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting FED.R.CIV.P. 56(c), (e))); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to the plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999).  A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P. 56; *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

Eighth Amendment Standard

An unnecessary and wanton infliction of pain that is totally without penological justification constitutes cruel and unusual punishment that is forbidden by the Eighth Amendment.  *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Rhodes v.*

*Chapman*, 452 U.S. 337, 346 (1981)).  Courts have recognized that prison working conditions are conditions of confinement subject to scrutiny under the Eighth Amendment.  *Morgan v. Morgensen*, 465 F.3d 1041 (9th Cir. 2006); *Stephens v. Johnson*, 83 F.3d 198, 200 (8th Cir. 1996); *Franklin v. Kansas Dep't of Corrections*, 160 Fed.Appx. 730, 736 (10th Cir. 2005); *Lee v. Sikes*, 870 F.Supp. 1096, 1099 (S.D. Ga. 1994).

To establish a claim, plaintiff must demonstrate: a substantial risk of serious harm, defendant's deliberate indifference to that risk, and causation.  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1985)(citing *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1974 (1994); *LeMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993)).  Thus, there is both an objective and a subjective component of a viable Eighth Amendment claim.

The first requirement, the objective component of Eighth Amendment analysis, requires conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation – one "denying 'the minimal civilized measure of life's necessities.'"  *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).  The second requirement, the subjective component of Eighth Amendment analysis, requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish."  *Wilson v. Seiter*, 501 U.S. at 300, 111 S.Ct. at 2325 ("The source of the intent requirement is not the predilections of this Court, but in the Eighth Amendment itself, which bans only cruel and unusual *punishment*.  If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)).  "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)); *Hope*, 122 S.Ct. at 2514.

"A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of

and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 114 S.Ct. at 1979. To sustain a claim, plaintiff must show that the challenged conduct was "very unreasonable in light of a known risk" of harm or suffering. *Hardin v. Hayes*, 52 F.3d 934, 939 (11th Cir. 1995)(citing *Farmer*, 114 S.Ct. at 1978-79). Whether an officer was aware of a risk of serious harm may be deduced from circumstantial evidence such as the obviousness of the situation confronting the officer. *Hope*, 122 S.Ct. at 2514 ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.") (citing *Farmer*, 114 S.Ct. at 1981). However, mere knowledge by an official of infirm conditions does not establish deliberate indifference; it must also be demonstrated that, with knowledge of the infirm conditions, the official knowingly or recklessly declined to take actions that would have improved the conditions. *LeMarca v. Turner*, 995 F.2d at 1537.

In the context of denial of adequate medical care, the first requirement has been more specifically described as encompassing two subsidiary requirements: an objectively serious need, and an objectively insufficient response to that need. *Taylor*, 221 F.3d at 1258 (quoting *Estelle*, 429 U.S. at 104-06, 97 S. Ct. at 291). A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)(quotation omitted). The seriousness of the deprivation of that need is measured by the detrimental effect that the deprivation brought upon the person. *Id*. at 1188-89. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.* at 1188. As to the second component, deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. *Murrell v. Bennett*, 615 F.2d 306, 310, n. 4 (5th Cir. 1980). An inadvertent or negligent failure

to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be "repugnant to the conscience of mankind." *Id*. at 105-06, 97 S. Ct. at 292; *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). Negligence alone is not enough to violate the constitution. *Daniels, supra.* Obviously, a complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical attention, and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 942 F.2d 1495, 1507 (11th Cir. 1991)(quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).

Finally, the third requirement of an Eighth Amendment claim, causation, requires some causal connection between each defendant named and the injury allegedly sustained. *Marsh, supra; Swint v. City of Wadley, Alabama,* 51 F.3d 988, 999 (11th Cir. 1995); *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). The causal connection may be established by proof that the official was personally involved in the acts that resulted in the constitutional deprivation, or where the official has established or utilized a policy or custom that results in deliberate indifference to a prisoner's rights. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted); *Ancata v. Prison Health Servs., Inc*., 769 F.2d 700 (11th Cir. 1985).

**Qualified Immunity Standard**

Defendants Berrios and Ferguson assert that they are entitled to qualified immunity from suit in their individual capacities. The doctrine of qualified immunity is a guarantee of fair warning. *McElligott v. Foley,* 182 F.3d 1248, 1260 (11th Cir. 1999). It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. *Hope v. Pelzer, supra*; *Conn v.*

*Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Powell v. Georgia Dep't of Human Resources*, 114 F.3d 1074 (11th Cir. 1998). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. *McElligott*, 182 F.3d at 1260 (citing *United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d at 1194 (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.,* at 1194. The Supreme Court has established a two-part test for evaluating a claim of qualified immunity. First, the trial court must determine whether a constitutional right has been violated on the facts alleged. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). The court must assess the facts in a light most favorable to the party asserting the injury. *Id*. Second, if a violation has been established, the court must determine whether the right was "clearly established." *Id*. The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity. *Hope v. Pelzer*, 122 S.Ct. at 2515; *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar. *Hope v. Pelzer*, 122 S.Ct. at 2516. Instead, the law merely must give defendants "fair warning" that their actions are unconstitutional. *Id*. In light of pre-existing law, the unlawfulness must be apparent. *Id*.; *Creighton*, 483 U.S. at 640, 107 S.Ct. 3034.

"In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Wilson v. Strong*,

156 F.3d 1131, 1135 (11th Cir. 1998) (quoting *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n. 4. (11th Cir. 1997)).

**Conclusions of Law Regarding Material Facts**

The parties do not dispute that defendants Berrios and Ferguson engaged in the alleged wrongful conduct while acting within the discretionary authority of their employment. (Doc. 37, ex. 9). The burden thus shifts to plaintiff to show that these officials are not entitled to qualified immunity. He must first establish that the defendants' conduct violated his Eighth Amendment rights.

 A. Workplace Safety Claim

The summary judgment evidence raises no genuine issue of material fact concerning the facts of, or circumstances surrounding, plaintiff's accident and injury. Furthermore, although the parties dispute whether plaintiff was provided a safety briefing on August 3, 2003, the undersigned concludes that this particular fact is not material to plaintiff's claim.[5] Even taking plaintiff's allegations as true and assuming that that particular briefing did not occur, plaintiff fails to establish that Ferguson was deliberately indifferent to a serious issue of workplace safety.

The parties have not cited, and the undersigned has been unable to locate, any published Eleventh Circuit cases applying the Eighth Amendment's deliberate indifference standard in the workplace safety context. Other courts, however, have dealt with this specific issue and held that prison officials are deliberately indifferent when they "knowingly compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful." *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977); *Morgan v. Morgensen*, 465 F.3d at 1045 (same); *Jackson v. Caine*, 864 F.2d 1235, 1246 (5th Cir. 1989) (same); *Franklin v. Kansas Dep't of Corrections*, 160 Fed.Appx. at 736 (same); *see also Brown v. Richmond County Correctional Inst.*, 2006 WL 1431488 (S.D. Ga. 2006) (same).

Along this line, courts have recognized that the mere failure to provide proper instructions or safety devices for use on prison work details does not constitute

---

[5] There is no evidence in the summary judgment record indicating what the August 3, 2003 safety briefing entailed.

deliberate indifference. *See, e.g., Stephens v. Johnson*, 83 F.3d at 200-01 (holding that lack of safety training equipment, including no steel-toed boots and no safety straps on moving dollies in warehouse, as well as allegations of a pattern of injuries, showed at most negligence for not taking better safety precautions); *Warren v. State of Missouri*, 995 F.2d 130 (8th Cir. 1993) (holding that prison officials' failure to provide "anti-kickback" protective equipment on saw, as well as allegations that officials knew of similar prior accidents that could have been prevented with protective equipment, did not create a genuine issue of material fact as to deliberate indifference to a serious issue of workplace safety); *Bibbs v. Armontrout*, 943 F.2d 26 (8th Cir. 1991) (holding that prison officials' alleged knowledge that safety guards covering the gears of an inker had been removed, and their failure to repair it, amounted to mere negligence); *Benson v. Cady*, 761 F.2d 335 (7th Cir. 1985) (holding that prison officials' failure to inspect and maintain cell beds and exercise equipment which, in two separate incidents, fell and allegedly injured inmate, were merely assertions that the officials did not exercise due care, not evidence of deliberate indifference); *Arnold v. South Carolina Dep't of Corrections*, 843 F.Supp. 110 (D. S.C. 1994) (holding that kitchen supervisors' knowledge of faulty condition of steam pot, and their failure to repair it, was not sufficient to establish that officials acted with an attitude of deliberate indifference); *Franklin v. Kansas Dep't of Corrections, supra*, (holding that even assuming that the risk to the prisoner of a back injury from improperly lifting heavy objects as part of his prison job was objectively serious, prison officials' alleged negligent failure to ensure that inmates were informed of and used proper lifting techniques did not rise to the level of an Eighth Amendment violation); *Lee v. Sikes, supra* (holding that there was no genuine issue of material fact as to deliberate indifference and that plaintiff's allegations amounted to mere negligence, where prisoner who was attacked by hog while working on hog farm alleged that prison officials failed to provide him with "proper facilities, training, or protective equipment to work with the breeding hogs," and that officials assigned him to "work directly with the hogs which were known to have vicious tendencies"); *Brown v. Richmond County Correctional Inst., supra*, (concluding that failure to provide a helmet in cutting tree limbs, an activity that

"does not, in itself, involve an imminent threat of physical harm posing a danger to a prisoner's life or health," did not rise above the level of mere negligence).

However, when a prison official knowingly compels a prisoner to perform work that involves an imminent threat of serious physical harm posing a danger to the prisoner's life or health, deliberate indifference has been found to exist. *See, e.g., Gill v. Mooney*, 824 F.2d 192 (2nd Cir. 1987) (holding that inmate stated Eighth Amendment claim against correctional officer, where inmate alleged that officer ordered him to continue working on a defective ladder even though the officer knew the ladder was unsafe); *Morgan v. Morgensen, supra* (holding that prison official was not entitled to qualified immunity on prisoner's Eighth Amendment claim that he ordered the prisoner to continue operating defective printing press which the official had been warned and had reason to believe was dangerously defective); *Ambrose v. Young*, 474 F.3d 1070, 1078 (8th Cir. 2007) (concluding that prison official's instruction to stomp out fire burning near a dangling live power line constituted deliberate indifference to a known and substantial risk); *Hall v. Bennett*, 379 F.3d 462, 464-65 (7th Cir. 2004) (holding that genuine issues of material fact existed as to whether supervisors knew that inmate could suffer a severe electrical shock as a consequence of working on a live wire of elevated voltage without protective gloves; summary judgment evidence established that supervisors assigned the inmate the task of working on the circuit, but denied him protective gloves).

Plaintiff's allegations in this case, that Ferguson failed to provide instructions or safety training on work equipment, simply do not rise to the level of deliberate indifference. At most, they suggest negligence. The same is true of plaintiff's allegations that Ferguson knowingly compelled plaintiff to operate a mower with which he was unfamiliar. Operating the mower was not, in itself, an inherently or obviously dangerous activity involving an imminent threat of physical harm posing a danger to plaintiff's life or health. Moreover, there is no dispute that plaintiff was experienced in using at least one other type of mower, and that Ferguson was aware of this experience. Because the facts alleged, taken in the light most favorable to plaintiff, fail to show that defendant Ferguson violated a constitutional right, Ferguson's motion for summary judgment should be granted.

B.      Medical Treatment Claim

The summary judgment evidence establishes these essential facts underlying plaintiff's medical treatment claim. In setting forth these facts, the undersigned has taken the evidence submitted by plaintiff in the light most favorable to him. However, where the defendants have submitted affirmative medical evidence establishing a particular fact, and plaintiff has failed to come forward with evidentiary material demonstrating a genuine issue for trial as to that fact, the undersigned has relied upon the medical evidence in the summary judgment record.

Approximately one hour after the accident, at 3:00 p.m. on August 13, 2003, plaintiff presented himself at the Eglin Medical Clinic reporting a big toe injury. (Doc. 14, Facts ¶ 5; doc. 37, ex. 4A, p. 4 ¶ 8). Plaintiff was examined by Defendant Doctor Berrios and P.A. Georgy.[6] (*Id*.). Plaintiff had a small abrasion approximately .07mm in size with minimal bleeding. (Doc. 14, Facts ¶ 5; doc. 37, ex. 4A, p. 4 ¶¶ 10-11 and ex. 7 ¶ 10). P.A. Georgy cleaned the area with hydrogen peroxide. (Doc. 37, ex. 4A, p. 4 ¶ 12 and ex. 7 ¶ 3). Doctor Berrios then directed P.A. Georgy to apply two sutures to the abrasion without an anesthetic. (Doc. 14, Facts ¶ 5; doc. 37, ex. 4A, p. 4 ¶ 12 and ex. 7 ¶ 3). When plaintiff complained of pain, he was told, "there isn't enough time and it won't do you any good." (*Id*.). It is medically acceptable to suture small wounds such as plaintiff's without anesthesia because the use of anesthesia would cause more pain to the patient than the actual suturing itself since anesthesia requires two or three shots. Further, anesthesia causes irritation and a burning sensation which, for a small injury, would cause more discomfort than the actual stitches. (Doc. 37, ex. 7 ¶ 4). Upon completing the procedure, P.A. Georgy prescribed 400 mg of an over-the-counter pain reliever (Ibuprofen, according to plaintiff; Motrin, according to defendants) for plaintiff to take for pain, if necessary. (Doc. 14, Facts ¶ 5; doc. 37, ex. 4A, p. 4 ¶ 12 and ex. 7 ¶ 3). On August 13, 2003

---

[6]Although the parties dispute whether defendant Doctor Berrios was present at this initial examination, and whether he ordered P.A. Georgy to suture plaintiff's foot without an anesthetic, the undersigned finds that resolution of these disputes are not necessary. Even assuming plaintiff's version to be true (that Berrios was present and gave that order), defendant Doctor Berrios is entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim.

Doctor Berrios reviewed the injury report and did not note any discrepancies in P.A. Georgy's treatment. (Doc. 37, ex. 4A, p. 4 and ex. 7 ¶ 3).

On August 18, 2003 plaintiff was seen by Doctor Casiano and P.A. Frank Kaufman. (Doc. 14, Facts ¶ 6). Upon visual examination of plaintiff's foot they concluded that it was fractured, and ordered x-rays. (*Id.*).[7] P.A. Kaufman noted that plaintiff had good range of motion in his foot and that the sutures were in place. (Doc. 37, ex. 4A, p. 8). Plaintiff was seen again on August 22, 2003 by P.A. Kaufman as a follow-up. (*Id.*, ex. 4A, p. 7). On August 25, 2003, when the sutures were removed from plaintiff's foot, there were no complications or any complaints from plaintiff. (*Id.*, ex. 4A, p. 6). An x-ray of the injured foot was taken on August 25, 2003. (*Id.*, ex. 4A, p. 5). The radiologist found no fractures or dislocations. (*Id.*). The radiologist's report was reviewed by defendant Doctor Berrios on August 27, 2003. (*Id.*). If plaintiff's toes were disfigured, this disfigurement would have been visible on the x-ray. (Doc. 37, ex. 7 ¶ 7). Another x-ray of plaintiff's foot was taken on June 14, 2005. It disclosed no bone or joint abnormalities. (*Id.*, ex. 4B, p. 4). The radiologist's report was reviewed by Doctor Casiano on June 18, 2005. (*Id.*).

Plaintiff has not shown the existence of a genuine issue of material fact as to whether defendant Doctor Berrios' conduct displayed a deliberate indifference to plaintiff's serious medical need. The reasonableness of defendant Doctor Berrios' treatment is supported by the unrebutted medical evidence in the summary judgment record establishing that plaintiff's injury was immediately cleaned and sutured; that he was not given anesthesia because it would have caused more discomfort than the suturing itself; that plaintiff was given pain medication after the procedure; that he was provided follow-up treatment including two x-rays; and that the x-rays of plaintiff's foot revealed no fractures, dislocations or bone abnormalities. Plaintiff's allegations reflect nothing more than his general disagreement concerning the lack of anesthesia. This, however, is insufficient to

---

[7] Although the parties dispute whether Doctor Casiano was present at this examination, and whether Doctor Casiano and P.A. Kaufman concluded that plaintiff's foot was fractured upon visual examination, the undersigned finds that resolution of these disputes are not necessary. Even assuming plaintiff's version to be true (that Casiano was present and concluded that plaintiff's foot was fractured upon visual examination), defendant Doctor Berrios is entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim.

establish deliberate indifference.  *See Harris*, 941 F.2d at 1505; *Waldrop* at 1033.  Moreover, even assuming the truth of plaintiff's allegation that Doctor Casiano initially diagnosed the foot as fractured, this raises no genuine issue of material fact on the issue of deliberate indifference, because plaintiff has offered no evidence to rebut Doctor Berrios' medical evidence (the subsequent x-rays) dispelling Doctor Casiano's alleged preliminary diagnosis.

Taking the summary judgment evidence in a light most favorable to plaintiff, the record demonstrates that there is no genuine issue of material fact for trial, and that plaintiff has failed to demonstrate that Doctor Berrios was deliberately indifferent to his toe injury.  Therefore, defendant Berrios' motion for summary judgment should be granted.

### LEGAL ANALYSIS - CLAIMS AGAINST GRAHAM

Plaintiff seeks to impose liability against defendant Graham on the grounds that he was defendant Ferguson's supervisor at the time of the accident, and that he "failed to ensure that BOP policy on inmate safety training was properly followed." (Doc. 14, p. 10).  Plaintiff's sole factual allegation in support of this claim is that "[i]t is implausible that Defenda[n]t Graham would be unaware of defendant Rodney's continuing failure to provide any Safety Training to inmates and thus establishes a causal connection between Graham's indifference and my injury."  (*Id.*, Statement of Facts ¶ 4).

"It is well established in this Circuit that supervisory officials are not liable under *Bivens* for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  *Dalrymple v. Reno*, 334 F.3d 991, 995-96 (11th Cir. 2003) (internal quotation marks omitted).  "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation."  *Id.* (internal quotation marks omitted).  The causal connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."  *Gonzalez v. Reno*, 325 F.3d 1228, 1234-35 (11th

Cir. 2003) (internal quotation marks and citation omitted). A causal connection also may be established where the official has established or utilized an improper "custom or policy [that] resulted in deliberate indifference to constitutional rights," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). Finally, a causal connection can be established "by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Dalrymple*, 334 F.3d at 996. Ordinarily, and significantly to this case, a supervisor <u>cannot</u> be held liable under a *respondeat superior* theory for the acts and omissions of individuals <u>acting in contravention to policy</u>. *Tittle v. Jefferson County Comm'n,* 10 F.3d 1535, 1540 (11th Cir. 1994).

In the instant case, accepting the allegations of plaintiff's complaint as true and construing them in the light most favorable to him, he fails to state an Eighth Amendment claim against defendant Graham. Graham cannot be held liable under *Bivens* based on his status as Ferguson's supervisor. Nor can he be held liable based on plaintiff's bald, conclusory assertion that it was implausible that he could not have known of the alleged misconduct. Thus, plaintiff's claim against defendant Graham should be dismissed.

## CONCLUSION

Upon full consideration of the evidence within this record, the court concludes that material facts are not in dispute and that defendants Ferguson and Berrios are entitled to judgment as a matter of law. The court further concludes that plaintiff's case against defendant Graham should be dismissed for failure to state a claim.[8]

---

[8] The undersigned has expressly declined to resolve the exhaustion issue raised in defendants' motion, because at best (for defendants) this would result in dismissal of plaintiff's workplace safety claims against defendants Ferguson and Graham <u>without prejudice</u>. Further, the undersigned has expressly declined to construe the complaint as raising negligence claims, because plaintiff abandoned any such claims in his second amended complaint. (*See* docs, 11, 12 and 14; N.D. Fla. Loc. R. 15.1).

**Accordingly it is respectfully RECOMMENDED:**

**1. That defendants Ferguson and Berrios' motion for summary judgment (doc. 37) be GRANTED, and the clerk be instructed to enter judgment in favor of these defendants.**

**2. That plaintiff's claim against defendant Graham be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted.**

**3. That defendant Ferguson be required to pay the costs of personal service of process, $322.38, in accord with FED.R.CIV.P. 4(d).[9]**

**4. That the clerk be directed to close this file.**

**At Pensacola, Florida this 16th day of May, 2007.**


/s/ *Miles Davis*
       **MILES DAVIS**
       **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**

---

[9]**On April 6, 2007 the undersigned issued an order requiring defendant Ferguson to show cause why the costs of personal service should not be imposed upon him. (Doc. 45). Defendant Ferguson responded. (Doc. 50). Defendant Ferguson's response fails to show good cause for his failure to comply with the request for waiver of service made by plaintiff (through the United States Marshal Service).**